# Exhibit A

PAYMENT HOLDS DUE TO
CREDIBLE ALLEGATIONS OF FRAUD

Larry Heyeck, Esq.
Deputy General Counsel
New Mexico Human Services Department

## I.    INTRODUCTION

In section 6402(h) of the Patient Protection and Affordable Care Act (P.L. 111-148)("PPACA"), Congress amended section 1903(i)(2) of the Social Security Act to provide that federal Financial Participation ("FFP") in the Medicaid program "shall not be made with respect to any amount expended for items or services (other than an emergency item or service, not including items or services furnished in an emergency room of a hospital) furnished by an individual or entity to whom a state has failed to suspend payments under the plan during any period when there is pending an investigation of a credible allegation of fraud against an individual or entity as determined by the state, unless the State determines in accordance with the federal regulations that good cause exists not to suspend such payments."[1] Federal law defines a "[c]redible allegation of fraud" as an "allegation, which has been verified by the State, from any source."[2]

On February 2, 2011, the Centers for Medicare & Medicaid Services ("CMS") revised its regulations to comport with the new PPACA provisions.  Under 42 C.F.R. §455.23 state Medicaid agencies "must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the

---

[1] See, 76 Fed.Reg. 5931 (February 2, 2011).

[2] See, 42 C.F.R. §455.2.  The same definition for credible allegations of fraud is used for the Medicare program. See, 42 C.F.R. §405.370.  Under Medicare, CMS, in consultation with the Health and Human Services Office of Inspector General and, as appropriate, the Department of Justice, must suspend payments based upon credible allegations of fraud.  Similar to the revised Medicaid rule, the payment withhold can be suspended, in whole or in part, for good cause exceptions.  See, 42 C.F.R. §§405.471 and 405.372.

Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend payment only in part."[3]  Because the payment hold takes effect immediately, many providers will suffer cash-flow shortages and may ultimately be forced to close their doors.  In such a situation, providers will first look to the state Medicaid Agency for relief as that was that agency that turned off the payments; however, under the revised rules once a payment hold is put in place, the agency may resume payments in whole or in part only if "good cause" exists.

Faced with this mandatory requirement to withhold payments to providers leaves state Medicaid agencies with limited discretion.  This article provides suggestions to those agencies faced with complying with the statute's intent of ensuring the integrity of Medicaid funds and providing adequate access to services for Medicaid recipients.

## II.    THE SUSPENSION PROCESS

CMS recognized that credible allegations of fraud "may stem from a variety of sources".[4] Once the state Medicaid Agency receives a credible allegation of fraud, it must conduct a preliminary investigation in accordance with 42 C.F.R. §455.14.[5]  Although there are no specific criteria on what should be included in a preliminary investigation, the state Medicaid agency should include the following:

- verification of professional credentials, enrollment and/or licensing;

---

[3] See, 42 C.F.R. §455.2.  "A credible allegation of fraud may be an allegation, which has been verified by the State, from any source, including but not limited to the following: (1) fraud hotline complaint; (2) claims data mining; (3) patterns identified through provider audits, civil false claims cases, and law enforcement investigations.  Allegations are considered to be credible when they have indicia of reliability and the State Medicaid agency has reviewed all allegations, facts, and evidence carefully and acts judiciously on a case-by-case basis."  See, id.

[4] See, CPI-B 11-04, March 25, 2011, regarding CMS Guidance to States on Section 6402(h) of PPACA at: http://downloads.cms.gov/cmsgov/archived-downloads/CMCSBulletins/downloads/payment-suspension-info-bulletin 3-25-2011.pdf.

[5] See, 42 C.F.R. §455.14.

- collection from the claims administrator of medical records relating to a provider;
- preliminary review and assessment of medical records and documentation by a medical expert reviewed and/or consultant;
- claims sampling/comparison to billing for services;
- interviews with patients and/or other providers or suppliers;
- consultation with medical experts and consultants, if necessary.[6]

The threshold level of determining whether credible allegations of fraud exist under the revised rule is significantly lower than the requirement of "reliable evidence" under the old rule.[7]  CMS explained that it modified the terminology in "§455.23(a) that [under the prior language] refer[red] to 'receipt of reliable evidence' to . . . a 'pending investigation of a credible allegation of fraud'" in an effort to create a "substantive difference between the threshold level of certainty or proof necessary to identify a 'credible allegation' versus the heightened requirement of 'reliable evidence' [under the prior language]."[8]  Consequently, state Medicaid agencies will be forced to withhold payments, in whole or in part, on more Medicaid providers than ever before.

Another requirement imposed upon a state Medicaid agency is the fraud referral to the Medicaid fraud control unit ("MFCU").[9]  State MFCUs operate independently of the state Medicaid agency to investigate and prosecute violations of state laws pertaining to Medicaid fraud.[10]  This includes the ability of state MFCUs to refer any provider to the state Medicaid

---

[6] The Texas Office of Inspector General for the Texas Health and Human Services Commission adopted this approach for conducting preliminary investigations of credible allegations of fraud.  See, Frequently Asked Questions, Payment Holds Due to a Credible Allegation of Fraud, https://oig.hhsc.state.tx.us/Reports/CAF_FAQs-2012-09-19.pdf.

[7] CMS stated that "[i]n the proposed rule, [we] acknowledge[] that the proposed threshold for triggering a payment suspension is lower than what is contemplated in current regulations, but [CMS] also indicated that [it] believed this result is dictated by the ACA."  See, 76 Fed.Reg. 5935 (February 2, 2011).

[8] See, 76 Fed.Reg. 5932 (February 2, 2011).

[9] See, 42 C.F.R. §455.23(d).  Although all states have a MFCU, the regulation permits referrals to an appropriate law enforcement agency which may include Office of the Inspector General, state police or local district attorney's offices.

[10] See, 42 C.F.R. Part 1007.  MFCU organizations operate in all states and receive 90% of their funding from CMS. See also, National Association of Medicaid Fraud Control Units, http://namfcu.net.

agency for imposition of a payment suspension when the state MFCU is conducting its own investigation into a credible allegation of fraud.[11]

The revised rule makes clear that the state Medicaid Agency must immediately suspend payments **before** the provider is notified of the suspension.[12]  Once payment is suspended albeit for a "temporary" period of time, the state Medicaid agency is required to provide written notice of the suspension and "[s]et forth the general allegations as to the nature of the suspension action, but need not disclose any specific information concerning an ongoing investigation."[13] Commentators suggested that this unilateral act violates the due process requirement and that, for some providers, this would be a de facto termination.  CMS disagreed and noted that "providers have an opportunity to submit written evidence for consideration by the Medicaid agency regarding payment suspensions.  Based upon this written evidence, a state may determine whether there is good cause to terminate a suspension of payment."[14]  In addition, "[a] provider may request, and must be granted, administrative review where State law so requires."[15]  CMS acknowledged that "individual State laws vary with regard to their respective administrative review processes" and recommended that the state Medicaid agency "include relevant citations

---

[11] See, 42 C.F.R. §1007.9(e).

[12] See, 42 C.F.R. §455.23(a)(2).  CMS did not agree "that providers should be given notice of a payment suspension prior to such action being taken."  CMS recognized "the sensitive nature of a fraud investigation which may be jeopardized by such notice, and expect that State agencies will act appropriately so as not to jeopardize any investigation."  See, 76 Fed.Reg. 5737 (February 2, 2011).

[13] See, 42 C.F.R. §455.23(b)(2)(ii).

[14] See, 76 Fed.Reg. 5940 (February 2, 2011).

[15] See 42 C.F.R. §455.23(a)(3).

to State law."[16]   In reality, however, the administrative review must be limited to the only area where the state Medicaid agency has any discretion - - the "good cause" exceptions.

## III.   APPLICATION OF THE REVISED RULE

Applying the revised rule puts State Medicaid agencies and their providers in a proverbial "Catch-22" scenario.   The State Medicaid agency **must** suspend payments upon credible allegations of fraud and send written notice to the provider of "the general allegations."   The State agency cannot disclose the particulars of the investigation without possibly tampering with it; yet, must give some indication to the provider of the nature of the claims.   Even CMS recognized the "sensitive nature of a fraud investigation . . ." and expects "that State agencies will act appropriately so as not to jeopardize" the criminal investigation.[17]   This statement implies that state Medicaid agencies should only give a broad statement of the nature of the allegation without any particulars.   Thus, providers who receive such notice are told: (1) payments have been suspended in accordance with 42 C.F.R. §455.23; (2) they are under investigation based upon credible allegations of fraud and the general nature of the allegations; and (3) they have a right to submit written evidence within 30 days of date of the notice to support the removal of the withhold in whole or in part.   Within 30 days of receipt of written arguments and documentation in response to the withhold, the state Medicaid agency will review the information and notify the provider of the results of that review.   After the review, the determination to impose the payment withhold may be affirmed, reversed or modified, in whole or in part.   This decision shall not be a determination on the results of any criminal investigation initiated by MFCU.

---

[16] See, 76 Fed.Reg. 5940 (February 2, 2011).

[17] See, 76 Fed.Reg. 5937 (February 2, 2011).

5

For example, if the provider is an entity that is accused of submitting claims for services rendered by a non-licensed professional and/or double billing for a particular service, the state Medicaid agency should not disclose the non-licensed professional or identify the service in questions - - to do so might impact what is now a criminal investigation.  From the provider's perspective, it is difficult to determine what "written evidence" should be presented if the provides does not know the substance of the investigation.   And even if the provider is clairvoyant and "knows" the subject matter of the criminal investigation, submission of written evidence may be used against it at a criminal trial.

In New Mexico, approximately 80% of that state's Medicaid population is enrolled in managed care.[18]  Since the final rule applies to Medicaid managed care,[19] the state Medicaid agency receives referrals for possible fraud and/or abuse from the managed care organizations (MCOs), reviews the information and can either conduct an in-depth audit itself on the identified providers or request that the MCO conduct further review.  In both instances, the state Medicaid agency's oversight committee will review the findings and, if verified, determine whether credible allegations of fraud exist.  If credible allegations exist, the state Medicaid agency must: (1) suspend payments; (2) make a referral to MFCU; and (3) provide notice to the affected provider.

Early on, when New Mexico instituted CMS' revised  rule, providers responded to the state Medicaid agency's notice of payment suspensions with requests for more information regarding the allegations of fraud, including requesting administrative review under the revised rule.  Although New Mexico does provide administrative review for provider recoupments

---

[18] See, State of New Mexico, Human Services Department Medicaid eligibility reports by category or eligibility at: http://www.hsd.state.nm.us/mad/RMedicaidEligibility.html.

[19] See, 76 Fed.Reg. 5937-5938.

and/or provider termination, such review is not available for accepted referrals by MFCU for credible allegations of fraud.[20]   Accordingly, New Mexico's revised its notice to impacted providers and now only permits submission of written evidence to support the provider's assertion that good cause exists under the revised rule.  All state Medicaid agencies should consider this approach as it limits the provider's response to the good cause exceptions and avoids any discussion surrounding the fraud referral which is now out of the state Medicaid agency's purview and is being investigated by MFCU.  This approach appears to be consistent with CMS' response to the comments:

> [u]nder the proposed rule [now final], providers have an opportunity to submit written evidence for consideration by the Medicaid agency regarding payment suspensions.  Based upon this written evidence, a State may determine whether there is good cause to terminate a suspension of payment.   Accordingly, we believe there are adequate due process protections in place pursuant to which a provider may establish good cause to terminate a payment suspension . . . .  Moreover, we expressed in the proposed rule that suspensions, because of their significant impact upon providers, are only temporary.  We provided in the rule several protections (such as quarterly law enforcement and State documentation requirements) and also various "good cause" exceptions . . . . .  We believe that significant built-in protections, in conjunction with the fact that we are not aware that the current Medicaid suspension process has caused significant undue hardship with providers having payments wrongly suspended, lend adequate safeguards to the process.  CMS will also monitor States' implementation of the Medicaid payment suspension rule through the various documentation requirements and State program integrity reviews, to ensure that there are no marked shortcomings with regard to States' processes.[21]

## IV.   GOOD CAUSE EXCEPTIONS

There are several circumstances that, under the final rule, could constitute "good cause" for a State Medicaid agency to determine not to suspend payments or to discontinue an existing payment suspension, in whole or in part, to an individual or entity despite a pending criminal

---

[20] See, NMAC 8.353.2.10(C)(1)(c).

[21] See, 76 Fed.Reg. 5940 (February 2, 2011).

investigation.[22]  As such, the state Medicaid agency has the discretion to determine good cause

both at the pre-suspension (before notice is sent to the provider) and post-suspension stages (after

the notice has been sent).   As stated by CMS, good cause exceptions to terminate a whole

payment suspension or impose a partial suspension generally include the following:

1.  Specific requests by law enforcement that state officials not suspend (or continue to suspend payment.
2.  If a state determines that other available remedies implemented by the state could more effectively or quickly protect Medicaid funds than would implementing (or continuing) a payment suspension, such as requiring pre-approval of claims by a third-party billing agent before the state Medicaid agency pays the claim if improper billing practices has occurred.
3.  If a provider furnishes written evidence that persuades the state that a payment suspension should be terminated or imposed only in part.
4.  A determination by the state agency that certain specific criteria are satisfied by which recipient access to items or services would otherwise be jeopardized.
5.  A state may, at its discretion, discontinue an existing suspension to the extent law enforcement declines to cooperate in certifying that a matter continues to be under investigation and therefore warrants continuing the suspension.
6.  A determination by the state agency that payment suspension (in whole or in part) is not in the best interests of the Medicaid program.
7.  The credible allegation focuses solely on a specific type of claim or arises from only a specific business unit of a provider and the state determines that a suspension in part would effectively ensure that potentially fraudulent claims were not continuing to be paid.[23]

CMS has stated that it will assess a state Medicaid agency's implementation of the revised rule

through its state program integrity reviews, "to ensure that there are no marked shortcomings

with regard to State's processes."[24]  This requires the state Medicaid agency to document the

reasons for granting a good cause exception and conduct periodic reviews to ensure that the

reasons remain valid.  Otherwise, the state Medicaid agency jeopardizes its FFP on amounts paid

---

[22] See, 42 C.F.R. §§455.23(e) – (f).

[23] See, 42 C.F.R. §455.23(e) and See, CPI-B 11-04, March 25, 2011, regarding CMS Guidance to States on Section 6402(h) of PPACA.

[24] See, 76 Fed.Reg. 5940 (February 2, 2011).

to those providers who continue to serve Medicaid recipients during the pendency of an investigation for a credible allegation of fraud.[25]

## VI.    POTENTIAL RAMIFICATIONS

The imposition of a payment hold adversely impacts Medicaid providers and state Medicaid agencies.   Generally, the allegation will include either: (1) the entire operation, including clinical staff; (2) supervisory and/or management responsibilities; or (3) billing.   If the allegation is solely based on significant billing practices, such as upcoding or unbundling, the provider could request that the state Medicaid agency put in place an auditing agent who would be responsible for reviewing claims and certifying the accuracy of the claims prior to submission for payment.[26]   Upon submission, these claims would be paid by the state Medicaid agency. There would be a time-lag; however, at least there is the possibility of continued cash-flow to the provider.   Another approach is to have the provider request that a management agency take over the operations and billings - - using a "receiver" to operate the business until the criminal investigation can be completed.   The provider would continue to operate using the same taxpayer identification and provider numbers.   Last, is the complete transition of the Medicaid recipients assigned to the provider.   This could be accomplished by the provider notifying the state Medicaid agency of its intention to shut down or by filing bankruptcy and seeking protection of the federal bankruptcy court.

Once the payment withhold is in place, the state Medicaid agency has two primary responsibilities: (1) ensure that the Medicaid recipients receive care and treatment; and (2) protect the integrity of the Medicaid funds for prospective services.   This can only be

---

[25] See, 76 Fed.Reg. 5931 (February 2, 2011).

[26] CMS noted that the payment suspension would not apply to billing errors.  See, 76 Fed.Reg. 5926 (February 2, 2011).

accomplished by working with the impacted provider, MFCU and CMS.   In the first two instances, either having a billing agent come in and certify the claims prior to payment or using a management company that takes over the operations and billings, state Medicaid agencies need to address this additional cost component.   In most situations, the impacted provider may be required to pay this expense or it can be deducted from any prospective payment.   If the provider intends to shut its doors, the state Medicaid agency will need to work with the provider to transition the Medicaid recipients so that they can continue to receive services.   Under any approach, state Medicaid representatives will have to immediately address the situation, evaluate which approach is appropriate, and continue to be involved until the matter is resolved.   This can be administratively burdensome but necessary to protect Medicaid recipients and Medicaid funds. The key is to minimize any disruption in services.

## VII.   CONCLUSION

State Medicaid agencies are faced with imposing payment withholds whenever a credible allegation of fraud has been verified, a lower threshold than what was required under the former rule.  Once payment has been suspended, impacted providers should submit to the state Medicaid agency written evidence and documentation to support its contention that good cause exists to remove the payment withhold, in whole or in part.  This is the only discretion left with the state Medicaid agency as the state's MFCU has accepted the fraud referral and is now conducting a criminal investigation.  If the decision to withhold is affirmed by the state Medicaid agency, the provider and the agency should work towards a viable solution until MFCU can complete its investigation.   This solution should include how Medicaid recipients can continue to receive services and how to protect the integrity of prospective payments.